In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1647

SCOTT ANTONETTI, JERALD FUHRER and CINDY NADIGER,

*Plaintiffs-Appellants,*

*v.*

ABBOTT LABORATORIES,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-00768—**David H. Coar**, *Judge.*

ARGUED DECEMBER 4, 2008—DECIDED APRIL 21, 2009

Before BAUER, POSNER and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* After their termination from employment with Abbott Laboratories, plaintiffs Scott Antonetti, Jerald Fuhrer, and Cindy Nadiger sued their former employer, claiming that they were terminated on account of their race and national origin. Nadiger also claimed that her termination constituted unlawful retaliation in response to her complaints of sex discrim-

ination. The district court granted summary judgment in favor of Abbott, which Plaintiffs appeal and we affirm.

## I.  BACKGROUND

Plaintiffs worked as Instrument Technicians for Abbott Laboratories. During a typical eight-hour shift, Abbott allows hourly employees like Plaintiffs to take two ten minute paid breaks, which may be combined, and one thirty minute unpaid meal break. Employees clock in and out of work and also manually fill out a time card. The time-keeping program that Abbott uses automatically deducts thirty minutes from the time an employee was clocked in each day as an unpaid meal break.

On June 10, 2006, Plaintiffs, who are each Caucasian, worked a Saturday overtime shift with Marvin Gloria, who is Filipino, and Juan Luna, of Hispanic descent. During their shift, the group decided to leave Abbott's facilities for a sit-down breakfast at Little Nick's restaurant.[1] Although the precise timing of the event is disputed, the break lasted approximately thirty to forty-five minutes. Because of a technical problem, the group was not able to complete their project that day and only worked about five or six hours instead of the scheduled eight hours.

---

[1] Plaintiffs now claim that the breakfast was a working breakfast because they used the time to discuss their strategy for accomplishing the day's tasks. This explanation for the breakfast was never presented to management and cannot be considered now.

On Monday, Plaintiffs and Gloria each told their group leader, Brian Gravander, who was in charge of their time cards, that they did not take a lunch break during the Saturday shift.[2] Accordingly, Gravander wrote "NL" on those four time cards to indicate that the employees took no lunch. Luna did not work on Monday so he did not tell Gravander that he took no lunch break during the Saturday shift. Gravander asked the other employees collectively if Luna had taken a lunch break and one of them reported that he did not. Gravander did not write "NL" on Luna's card. However, he manually overrode the time-keeping program so that all five employees were paid as if they had not taken any unpaid breaks.

In late July or early August 2006, Luna's former supervisor, Larry Adams, approached Luna and asked if he knew of any incidents where employees went to breakfast during a weekend shift. Luna told Adams that his group ate an off-site breakfast on June 10, 2006 and also reported a similar off-site meal that Luna participated in with Antonetti. Although Luna asked Adams to keep the information in confidence, Adams relayed the June 10 incident to more senior management.

Managers Mike Patterson and Ray Hess, both Caucasian, subsequently began an investigation into the June 10 overtime shift. On August 23, 2006, they met with

---

[2] Fuhrer admits that he told Gravander that he did not take a lunch break. Antonetti and Nadiger do not remember, but do not dispute Gravander's testimony that they told him they did not take a lunch break.

Antonetti, Fuhrer, Nadiger, and Gloria individually, showed each individual his or her time card from June 10 bearing the "NL" notation, and asked about the events of that day. When asked if the group went off-site that day and where they went to breakfast, Antonetti could not remember where they had gone to breakfast and said that sometimes they would go to McDonald's. Fuhrer did not remember going off-site for breakfast during the June 10 shift. Nadiger did not remember whether they had taken a break that day. Gloria did not recall where the technicians went or how long they were gone during their break on June 10.

That same day, Hess interviewed Luna by phone because Luna was on an assignment in Mexico. Luna told Hess that the group went out for breakfast and that they were gone thirty to forty-five minutes. Although Luna could not remember the name of the restaurant, he told Hess where the restaurant was located.[3]

Plaintiffs and Gloria conferred after their interviews and remembered the breakfast at Little Nick's. Patterson met with Antonetti a second time that same day and

---

[3] Plaintiffs' argument that Luna was given preferential treatment because he was first confronted by Adams instead of Patterson and Hess, as well as their argument that Luna had an unfair advanced notice of the investigation so that Plaintiffs did not have an equal opportunity to explain what happened, are both presented to this Court for the first time in this litigation and are therefore waived. They are also unpersuasive.

Antonetti told Patterson about the incident, supposedly on behalf of all three Plaintiffs. At his deposition, Antonetti confirmed Patterson's summary notes of the investigation by admitting that he may have told Patterson something like, "I'm taking a risk by telling you the truth or changing my story," though he later denied memory of such a statement.

Patterson found it implausible that the technicians did not remember going off-site for breakfast during the Saturday overtime shift, since it was unusual to work on a Saturday, and unusual to leave Abbott's premises for a meal in the middle of a shift. Patterson also found the technicians' inability to remember the break implausible because during the interviews they did recall other details about the shift.

Plaintiffs and Gloria were subsequently terminated; Luna was not. Patterson made these decisions in consultation with others in management.

## II.  DISCUSSION

On appeal, Plaintiffs claim that the district court erred by granting summary judgment for Abbott on the discrimination and retaliation actions. Abbott argues that the district court acted properly because Plaintiffs could not establish a prima facie case of race or national origin discrimination, and had no evidence of retaliation. We review a district court's grant of summary judgment de novo. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Summary judgment is appropriate when

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Darst*, 512 F.3d at 907 (citation omitted).

### A. Race and National Origin Discrimination

Title VII of the Civil Rights Act of 1964 forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[4] A plaintiff may prove illegal discrimination either directly or indirectly. In this case, Plaintiffs rely on the indirect burden-shifting method of proof explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, Plaintiffs must first establish a prima facie case of discrimination by proving that: "(1) [they are] member[s] of a protected class; (2) [they were] performing [their] job[s] satisfactorily; (3) [they] suffered an adverse employment action; and (4) similarly situated employees outside of [their] protected class were treated more favorably." *Goodwin v. Bd. of Trustees of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006).

---

[4] Plaintiffs brought this action under Title VII as well as 42 U.S.C. § 1981. However, because both authorities require a plaintiff to prove the same elements to make out a prima facie case, the claims rise or fall together. *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 789 (7th Cir. 2001).

If Plaintiffs can demonstrate these four elements, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If Abbott satisfies this burden of production, Plaintiffs "must then establish that there is an issue of material fact as to whether the employer's proffered reasons are merely pretext for unlawful discrimination or retaliation, in order to survive summary judgment." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004) (citing *McDonnell Douglas Corp.*, 411 U.S. at 804).

The district court granted summary judgment on this claim because Plaintiffs could not satisfy the fourth element of their prima facie case—identifying a similarly situated employee outside of their protected class who was treated more favorably than they. Plaintiffs claim that Luna qualified as a similarly situated employee because he worked the same job, in the same department, and under the same supervisors as Plaintiffs, and because he worked the same June 10 overtime shift, took the same break, did not report the break, and was paid for the entire shift. Abbott argues that Luna was not similarly situated to Plaintiffs in the two areas that prompted Plaintiffs' terminations: (1) he did not tell Gravander that he took no lunch break during the June 10 overtime shift; and (2) he admitted to the breakfast when questioned by Adams.

When "a plaintiff claims that he was disciplined . . . more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must [typically] show

that . . . the two employees . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). The similar conduct to be examined must be material to the cause of the discipline. *See id.* at 617 ("In determining whether two employees are similarly situated a court must look at all *relevant* factors . . . ." (emphasis added)).

In this case, Plaintiffs were fired for time card fraud: saying that they took no break when they did and then suspiciously failing to remember the off-site meal when confronted. Luna did not engage in either of these material actions. Patterson's summary notes of the investigation make this distinction between the employees abundantly clear:

> Basic issue is the 4 techs documented "no lunch" on their time cards although they did go off site for a meal. . . .

> In addition, when questioned by Ray Hess, 4/5 techs either lied about or did not recall going off site for the breakfast. One technician, Scott Antonetti changed his story later in the day and admitted the truth.

> One technician, Juan Luna came forward during a discussion with Larry Adams to bring the situation to light in the first place. Juan also did not request a "no lunch" on his timecard but was apparently paid for the entire duration regardless. . . . Juan also was the only technician interviewed who told the truth during the initial discussion.

Therefore, Luna was not similarly situated.[5]

Without a similarly situated employee, Plaintiffs cannot present a prima facie case and their claim must fail.[6]

---

[5] Plaintiffs argue that the relevant conduct to be compared in this case is taking and not reporting the break—not affirmatively lying about it to Gravander, or lying or failing to remember it when questioned by management. Patterson's investigation notes do not support this theory, but, even if Plaintiffs are correct, Luna was not similarly situated because he did not tell Gravander that he took no lunch, and he was honest about the incident when questioned—mitigating circumstances that differentiate his conduct and Abbott's treatment of him. *Radue*, 219 F.3d at 617-18. In other words, whether the fact that Luna did not personally lie to Gravander and told the truth when confronted by Adams are the relevant factors to consider in the first place, or mitigating factors distinguishing the degree of Luna's misconduct from that of the other employees who took the break and did not report it, Luna was not similarly situated to Plaintiffs.

[6] Many of Plaintiffs' arguments address the issue of pretext; because Plaintiffs cannot survive the first step in the *McDonnell Douglas* analysis, we do not need to consider the third. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002) (under indirect method, failure to offer comparable employee dooms Title VII claim).

**B.  Retaliation**

Nadiger also claimed that she was terminated in re-taliation for her past and imminently approaching com-plaints of sex discrimination in relation to being denied a promotion in February 2006. Title VII protects em-ployees "from retaliation for complaining about the types of discrimination it prohibits." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000); 42 U.S.C. § 2000e-3(a). Like other discrimination claims, a plaintiff may prove retaliation through the direct or indirect method. In this case, Nadiger relies on the direct method.

To survive summary judgement, Nadiger must present sufficient direct or circumstantial evidence for the trier of fact to infer that there was a "causal link" between her complaints of sex discrimination and her termina-tion. *Culver v. Gorman & Co.*, 416 F.3d 540, 545-46 (7th Cir. 2005); *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006) (direct method requires plaintiff to prove "that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action" (quoting *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002))). If she could produce this inference, but her evidence is contradicted, which it is, then "the case must be tried unless [Abbott] presents unrebutted evidence that [it] would have taken the adverse employment action against [Nadiger] even if [it] had no retaliatory motive; in that event [Abbott] is entitled to summary judgment because [it] has shown that [Nadiger] wasn't harmed by retaliation." *Stone*, 281 F.3d at 644.

In this case, even if Abbott was partially motivated by Nadiger's complaints in its termination decision, it would have fired Nadiger without such motivation. Abbott terminated Antonetti, Fuhrer, and Gloria for time card fraud and Nadiger makes no attempt to, nor can she, distinguish herself from those employees, other than stating that unknown factors besides time card fraud could have partially motivated the decision to terminate those employees. Nadiger does not deny her participation in the June 10 breakfast or reporting that she took no lunch. Neither does Nadiger dispute that Patterson found her lack of memory implausible when questioned about the incident. Therefore, Abbott had a legitimate and independent justification for terminating Nadiger, would have terminated her even without any retaliatory motive, and is entitled to summary judgment. *Id.*

## III. CONCLUSION

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment.