In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2932

KEVIN GROESCH, GREG SHAFFER, and SCOTT ALLIN,

*Plaintiffs-Appellants,*

*v.*

CITY OF SPRINGFIELD, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 cv 3162—**Jeanne E. Scott**, *Judge.*

ARGUED JANUARY 14, 2011—DECIDED MARCH 28, 2011

Before BAUER, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The district court in this race discrimination case properly granted summary judgment for the defendant employer based on law applicable at the time. In this appeal, however, we rely on the retroactive effect of the Lilly Ledbetter Fair Pay Act of 2009 to reverse summary judgment in part and allow appellants to pursue their claims of race discrimination under Title VII of the

Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment.

I.  *Factual and Procedural Background*

We review a district court's grant of summary judgment de novo. *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009). "We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.*, quoting *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).

A.  *The Plaintiff Officers*

All three plaintiff-appellants—Kevin Groesch, Greg Shaffer, and Scott Allin—are white officers who were in good standing with the City of Springfield police department when they voluntarily resigned. At the times of their resignations, officers seeking reemployment were required to go through the hiring process for new police officers. Following successful completion of the process, officers were placed on an eligibility roster to await vacancies in the police department, and hired based on their rank on the roster. Rehired officers were required to reenter the force as entry-level officers in terms of pay, benefits, and seniority.

All of the appellants were subject to these regulations. Kevin Groesch was a police officer with the department for seven and a half years before resigning in 1988. When he later inquired about returning to the department, he was

told he would have to go through the hiring process for new officers because his sixty day leave of absence had expired. After reapplying to the police department and awaiting reemployment from 1989 through 1996, Groesch was rehired by the department as an entry-level patrol officer in 1996. When Greg Shaffer resigned from the police department in 1987, he had worked there for seven years. He went through the rehiring process and returned to the department in 1993 as an entry-level officer, with no credit for his earlier years of service. Scott Allin resigned in 1986 after six years of service with the department. After six months away, he attempted to rejoin but was told he needed to reapply. Allin was eventually selected from the eligibility roster in 1989 and returned to work with no credit for his earlier years of service.

B. *The "Schluter Ordinance" and State Court Litigation*

The three appellants base their race discrimination claim on the different treatment of Officer Donald Schluter, an African-American officer who voluntarily resigned in November 1999 after five years with the department. When Schluter sought to return after a brief absence, he was not required to start over. The chief of police spoke with a city alderman, and on March 28, 2000, the Springfield City Council enacted the "Schluter Ordinance," which specifically granted Officer Schluter a retroactive leave of absence to allow him to return with credit for his years of service as an officer. The "whereas" clauses in the Schluter Ordinance listed a variety of reasons for the ordinance, including an interest in diversity in police ranks. After the ordinance

was enacted, Officer Schluter returned to his position as a police officer without going through the formal hiring process, and he was hired at the same rate of pay he was earning when he resigned.[1]

After the Schluter Ordinance was enacted, the local police union brought a lawsuit in state court against the City and Officer Schluter claiming it was unconstitutional, unreasonable, discriminatory, and an abuse of discretion. The state trial court found in favor of the union, and for a time the ordinance was invalidated. On appeal, however, the Illinois Appellate Court reversed and reinstated the ordinance, concluding that the union lacked standing.

The appellants then wrote to the chief of police requesting that the City give them equal treatment and credit them with their earlier years of service to the department, but their request was ignored. On April 3, 2003, the appellants filed a new state court lawsuit claiming disparate treatment under the equal protection clause in Article 1, Section 2 of the Illinois Constitution. The state court action was dismissed on statute of limitations grounds in a judgment entered on November 10, 2003, and that decision was affirmed by the Illinois Appellate Court on July 22, 2004.

---

[1] This opinion should not be interpreted as expressing any view on the ultimate merits of appellants' race discrimination claims, including possible justifications for the Schluter Ordinance or differences between his situation and appellants' resignations and returns. We address only the statute of limitations and res judicata issues actually before us.

C. *District Court Proceedings*

The appellants then filed this lawsuit in federal district court on July 27, 2004. In an order dated February 1, 2005, the district court denied the City's motion to dismiss. The court relied in part on the "paycheck accrual" rule for determining timeliness of claims in pay discrimination. See *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014 (7th Cir. 2003); *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007 (7th Cir. 2003). The district court concluded that each paycheck from the police department amounted to a separate and distinct discriminatory act from which the officers could bring separate claims. On December 29, 2006, the district court denied the City's motion for summary judgment as to the appellants' claims arising out of paychecks received after the earlier state court decision. The City's motion was granted with respect to claims arising prior to the state court decision of November 10, 2003, which the district court determined were barred by the doctrine of res judicata, or claim preclusion. The district court also dismissed with prejudice Officer Shaffer's claim for monetary damages accruing prior to January 19, 2005, the date on which he had filed for bankruptcy protection.

On May 29, 2007, however, the Supreme Court decided *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which rejected the paycheck accrual rule and found that the plaintiff's claims of sex discrimination in pay were time-barred. In an order dated July 11, 2007, the district court granted the City's motion for summary judgment as to all remaining claims based on *Ledbetter*'s rejection of

the paycheck accrual rule. As the district court had concluded in its earlier opinion, the original adverse discrimination decision was in December 2002, when the appellants were denied the same treatment that Officer Schluter received. Under *Ledbetter*, the appellants needed to file their discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 300 days from that decision.[2] The district court found that the appellants' Title VII claims were untimely because they did not file with the EEOC until March 2, 2004. The district court also concluded that while the appellants filed their Section 1983 claims in a timely manner, during the applicable two-year statute of limitations period, the Section 1983 claims were barred by res judicata because they arose from the same set of operative facts as the state court action and could have been brought as part of that earlier lawsuit. While this appeal was pending, Congress enacted the Lilly Ledbetter Fair Pay Act in 2009.

II.  *The Ledbetter Decision and the Lilly Ledbetter Fair Pay Act of 2009*

The appellants argue that the Ledbetter Act requires that the judgment of the district court be reversed and that, because of the Ledbetter Act, the officers' Title VII and equal protection claims are not barred as untimely. We

---

[2]  Title VII claims must be filed within 180 or 300 days after the allegedly discriminatory act, depending on the state. In Illinois, the charging period is 300 days. See *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352-53 (7th Cir. 2002); 42 U.S.C. § 2000e-5(e)(1).

agree, except with respect to the appellants' claims for acts of discrimination before the state court judgment was entered on November 10, 2003, which we conclude are still barred by res judicata.

### A. *The Title VII Claims*

The district court properly applied the Supreme Court's decision in *Ledbetter* to grant summary judgment for the City on appellants' Title VII claims. The facts of *Ledbetter* are now well known. Plaintiff Lilly Ledbetter claimed sex discrimination in pay in violation of Title VII and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). She asserted that she had received negative performance evaluations because of her sex and that her pay continued to be affected by those past performance reviews. See *Ledbetter*, 550 U.S. at 622. Because each of the relevant evaluations occurred much more than 180 days before Ms. Ledbetter filed her EEOC charge, she relied on the paycheck accrual rule to show that her claims were timely. She argued that each time she was paid less than her similarly situated male colleagues as a result of the discriminatory evaluations, the payment was a separate and discrete wrong that triggered a new Title VII limitations period. *Id.* at 625. The Supreme Court rejected this argument and the paycheck accrual rule, holding that Ms. Ledbetter could not sue based solely on the present effects of a past discriminatory pay-setting decision that occurred outside of the limitations period. *Id.* at 621.

Like Ms. Ledbetter, the appellants relied on the paycheck accrual rule to bring their claims. They argued that each time they received a paycheck, they received less than they would have received if they had been treated like Officer Schluter, the returning African-American police officer. Following *Ledbetter*, the district court had no choice but to dismiss the appellants' Title VII claims.

Congress responded to the *Ledbetter* decision by enacting the Lilly Ledbetter Fair Pay Act of 2009, while this appeal was pending. The Act amends Title VII of the Civil Rights Act of 1964 by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision. More specifically, the Act provides that an "unlawful employment practice" occurs in the following situations: (1) "when a discriminatory compensation decision or other practice is adopted," (2) "when an individual becomes subject to a discriminatory compensation decision or other practice," and (3) "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A).

Congress took the unusual step of expressly providing that the Ledbetter Act applies retroactively to all claims pending on May 28, 2007 or later. Pub. L. 111-2, § 6. The appellants' Title VII claims are covered by the Ledbetter Act because they allege "discriminatory compensation decisions" and are based on the payment of wages resulting from those decisions.

The City has not offered any persuasive basis for avoiding application of the Lilly Ledbetter Fair Pay Act. First, the City argues that each paycheck the officers receive is determined by a "seniority pay system" and that a seniority pay system is a not a "discriminatory compensation decision or other practice" as contemplated by the Ledbetter Act. The problem is that the officers do not contend that the seniority pay system is inherently discriminatory, nor do they need to do so to satisfy the Ledbetter Act's requirements. A facially neutral compensation system may still be applied in a discriminatory manner. That is why the Ledbetter Act requires only "a discriminatory compensation decision or other practice," not an intrinsically discriminatory compensation system. It is enough to allege, as the officers do, that the City's decisions as to who received prior service credit within the existing seniority system were motivated by race. The City's seniority argument fails to come to grips with the fact that it changed the seniority system for Officer Schluter, and only for him. The City's "neutral seniority system" argument attempts to sidestep both the language of the Act and the heart of the matter alleged by the appellants—that the City refused to recognize the white officers' prior service under the seniority system while doing so for a black officer.

The City also relies on the first Supreme Court case to address the Ledbetter Act, *AT&T Corp. v. Hulteen*, 129 S. Ct. 1962 (2009). *Hulteen* was a pregnancy discrimination case in which the plaintiffs challenged the calculation

of their pension benefits based on differential treatment of pregnancy leaves taken decades earlier, before enactment of the Pregnancy Discrimination Act. The Supreme Court held that the Title VII protection of seniority systems insulated the defendants from liability based on retroactive application of the Pregnancy Discrimination Act. See 42 U.S.C. § 2000e-2(h). The Supreme Court also rejected an argument based on the Ledbetter Act, concluding that the defendants' treatment of pregnancy leave had not been unlawful at the time and that the defendants could apply their lawful seniority system. 129 S. Ct. at 1973. *Hulteen* does not help the City because the issue here is not a previously lawful seniority system but only the timeliness of claims based on an allegedly discriminatory decision to treat officers differently based on their race. As the district court concluded in its December 9, 2006 order, the appellants have offered a prima facie case that they were subjected to a discriminatory compensation decision. This is precisely the kind of decision covered by the Ledbetter Act.

Finally, the City seems to argue that this case can be distinguished from *Ledbetter* based on a supposed difference between race discrimination and sex discrimination, or the factual differences between discriminatory performance evaluations and the policy choice reflected in the Schluter Ordinance. These arguments miss the point of both the Supreme Court's broad rejection of the paycheck accrual rule in *Ledbetter* and the even broader legislative response in the Ledbetter Act. The district court's grant of summary judgment on

the Title VII claims after November 10, 2003 must be reversed.[3]


B. *The Equal Protection Claims under Section 1983*

The appellants' race discrimination claims under the Equal Protection Clause of the Fourteenth Amendment, brought under 42 U.S.C. § 1983, present some additional legal wrinkles. They filed those claims within the applicable two-year limit measured from the denial of their request for the same treatment that Officer Schluter received. But their equal protection claims were dismissed on res judicata grounds. In the absence of the paycheck accrual rule, the appellants each had only one discrimination cause of action that should have been asserted in their earlier and unsuccessful state court action.

Appellants argue, and we agree, that in the wake of the Ledbetter Act, they should be able to rely on the paycheck accrual rule to pursue their equal protection claims that

---

[3] The City's reliance on *Delaware State College v. Ricks*, 449 U.S. 250 (1980) (where plaintiff failed to file a timely charge after denial of tenure), and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("[a] discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences"), to argue that the paycheck accrual rule should not apply, is not at all convincing in light of the Ledbetter Act. Furthermore, these cases were decided well before *Hildebrandt* and *Reese*, where we held that the paycheck accrual rule applied to pay discrimination cases under Title VII.

arose after dismissal of the state court action. The paycheck accrual rule avoids the problem of res judicata because each paycheck reflecting the allegedly discriminatory decision gives rise to a distinct cause of action. We conclude that there is no principled reason for applying the paycheck accrual theory to claims arising under Title VII but not to those arising under 42 U.S.C. § 1983. As the district court concluded in denying the City's motion to dismiss pre-*Ledbetter*, *Hildebrandt* and *Reese*, our cases applying the paycheck accrual rule in the Title VII context, extend logically to equal protection claims arising under Section 1983. If it was not already clear that *Hildebrandt* extended the paycheck accrual rule to pay discrimination claims under Section 1983, we hold here that paychecks reflecting a past discriminatory compensation practice create fresh causes of action under Section 1983, just as they do under Title VII after the Ledbetter Act.

The Supreme Court articulated what became known as the "paycheck accrual rule" in *Bazemore v. Friday*, 478 U.S. 385 (1986), a case concerning the continued application of a racially discriminatory pay regime originally implemented prior to Title VII's enactment. The *Bazemore* Court concluded: "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII." *Id.* at 395 (in a concurrence by Justice Brennan, joined by all other Members of the Court). Initially, this circuit struggled to reconcile *Bazemore* with earlier Supreme Court cases emphasizing the difference between a discrete act and its later harmful effects. See, *e.g.*, *Webb v. Indiana National Bank*, 931 F.2d 434, 437-38 (7th Cir. 1991) (noting the difficulty in reconciling *Bazemore*

with earlier decisions like *Delaware State College v. Ricks*).
Early on, this circuit and others understood paycheck
discrimination claims like those in *Bazemore* as an out-
growth of the "continuing violation" doctrine. See
*Hildebrandt*, 347 F.3d at 1025-26 (discussing *Bazemore* and
its progeny), citing *Cardenas v. Massey*, 269 F.3d 251, 257
(3d Cir. 2001). We observed that, "Drawing the line
between something that amounts to a 'fresh act' each day
and something that is merely a lingering effect of an
earlier, distinct, violation is not always easy." *Hildebrandt*,
347 F.3d at 1026, quoting *Pitts v. City of Kankakee*, 267 F.3d
592, 595 (7th Cir. 2001).

In 2002, the Supreme Court decided *National Railroad
Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which
distinguished paycheck discrimination from the continuing
violation theory and helped clarify our own treatment of
the paycheck accrual rule articulated in *Bazemore*. "In
*Morgan*, the Supreme Court expressly relied on its state-
ment in *Bazemore* regarding each paycheck paid at a
discriminatory rate as an example of an actionable discrete
act or single occurrence, even when it has a connection to
other acts." *Hildebrandt*, 347 F.3d at 1027, citing *Morgan*, 536
U.S. at 111 (internal quotation marks omitted). *Morgan* held
that "discrete, discriminatory acts are not actionable if time
barred, even when they are related to acts alleged in timely
filed charges." *Morgan*, 536 U.S. at 113. The Court found
that, "Each discrete discriminatory act starts a new clock
for filing charges alleging that act. The charge, therefore,
must be filed within the 180- or 300-day time period after
the discrete discriminatory act occurred." *Id*.

Following *Morgan, Hildebrandt* and *Reese* firmly estab-
lished in our circuit that under Title VII, a new cause of
action for pay discrimination arose every time a plaintiff
received a paycheck resulting from an earlier discrimina-
tory compensation practice occurring outside the statute of
limitations period. See *Reese*, 347 F.3d at 1013-14, citing
*Hildebrandt*, 347 F.3d at 1028. While we stated no clear
holding in *Hildebrandt* that the paycheck accrual rule
extended to pay discrimination claims under Section 1983,
we concluded that the Supreme Court's decision in *Mor-
gan*, while focused on the timeliness of Title VII claims, also
applied to Section 1983 claims: "The Supreme Court's
ruling in [*Morgan*], although discussing the continuing
violation doctrine in the Title VII context, applies equally
to § 1983 cases." *Hildebrandt*, 347 F.3d at 1036 n.18. Other
circuits have reached similar conclusions. See, *e.g.*, *Sharpe
v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) ("We can find
no principled basis upon which to restrict *Morgan* to Title
VII claims, and we therefore conclude that the Supreme
Court's reasoning must be applied to the . . . § 1983
claims."); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d
1045, 1061 (9th Cir. 2002) (applying *Morgan* to Section 1983
claims). We see no reason—and the City offers no rea-
son—why we would treat a paycheck as a "discrete
discriminatory act" that triggers a new limitations period
under Title VII but not under Section 1983 for the purpose
of pay discrimination claims.

The district court found that the appellants had filed
timely Section 1983 claims, within the applicable two-year
statute of limitations, but that, under *Ledbetter*, the equal
protection claims were barred by res judicata because they

could have been brought within the state court action. In fact, the *Ledbetter* decision focused specifically on Ms. Ledbetter's Title VII claims and did not specify the applicability of its holding to constitutional claims under Section 1983. But if *Ledbetter* was understood to extend logically to Section 1983 claims, as, for example, we had earlier understood *Morgan*'s Title VII reasoning to extend to Section 1983 claims, see, *e.g.*, *Evans v. City of Chicago*, 2007 WL 4219415, at *2 (N.D.Ill. Nov. 29, 2007) (applying *Ledbetter* to plaintiff's § 1983 claims), then we see no reason that the Ledbetter Act would not now restore our pre-*Ledbetter* precedent and allow us to extend the paycheck accrual rule to Section 1983 claims. See, *e.g.*, *Shockley v. Minner*, 2009 WL 866792, at *1 (D. Del. Mar. 31, 2009) (With the Ledbetter Act, "Congress has explicitly overruled the decision and logic of the *Ledbetter* decision and thereby overruled the *Evans* [*v. City of Chicago*] [Section 1983] decision.").

*Ledbetter* and the Ledbetter Act leave some room for confusion as to the scope of the paycheck accrual rule. The *Ledbetter* decision explicitly applied only to Title VII claims, though its reasoning clearly would have extended to disparate pay claims under other employment discrimination statutes. The Ledbetter Act applies explicitly to claims under Title VII, but also to claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Age Discrimination in Employment Act, none of which were specifically addressed by the *Ledbetter* Court. See Pub. L. No. 111-2. Neither the *Ledbetter* decision nor the Ledbetter Act addresses constitutional claims asserted under

Section 1983.[4] In the absence of any clearer directive, we believe the best course is to treat the Ledbetter Act as removing the *Ledbetter* decision as an obstacle to following our earlier precedents, which recognized the paycheck accrual rule for all allegations of unlawful discrimination in employee compensation. We hold that the paycheck

---

[4] District courts have just begun to grapple with how broadly the Ledbetter Act should be construed. See, *e.g.*, *Aspilaire v. Wyeth Pharmaceuticals, Inc.*, 612 F. Supp. 2d 289, 303 n.6 (S.D.N.Y. 2009) (acknowledging, but declining to resolve, the fact that "[t]he Act does not, by its terms, apply to cases brought under § 1981 . . . However, Title VII, to which the Act does expressly apply, and § 1981 cases are frequently analyzed under the same framework . . . Undoubtedly, answers to these questions will soon emerge."). Answers are emerging, and district courts are coming to different conclusions. Compare *Russell v. County of Nassau*, where the court concluded that claims for salary discrimination under Title VI or Sections 1981, 1983, or 1985 are governed by the Supreme Court's analysis in *Ledbetter*. 696 F. Supp. 2d 213, 230 (E.D.N.Y. 2010), citing Pub. L. No. 111-2 ("[A]lthough, in addition to Title VII, the Ledbetter Act amended the Americans with Disabilities Act, the Rehabilitation Act, and the Age Discrimination in Employment Act, it did not amend Title VI, § 1981, § 1983 or § 1985."), with *Klebe v. University of Texas System*, 649 F. Supp. 2d 568 (W.D. Tex. 2009) (holding that the Ledbetter Act applies to reinstate employees' pay discrimination claims under Texas Commission on Human Rights Act), and *Schengrund v. Pennsylvania State University*, 705 F. Supp. 2d 425 (M.D.Pa. 2009) (declining to apply the reasoning of *Ledbetter* to pay discrimination claims under the Pennsylvania Human Relations Act when it no longer applies to Title VII claims ).

accrual rule applies to pay discrimination claims under Section 1983.

In a separate argument aimed at the equal protection claims, the City argues, contrary to the district court's ruling, that the act of alleged discrimination occurred not when the white officers asked the chief of police for equal treatment but on March 29, 2000, when the City passed the Schluter Ordinance. On this theory, the City argues that the two-year statute of limitations period for appellants' equal protection claims expired on March 29, 2002. The City argues that the Ledbetter Act "does not save otherwise untimely claims outside the discriminatory compensation context," quoting *Richards v. Johnson & Johnson, Inc.*, 2009 WL 1562952, at *9 (D.N.J. Jun. 2, 2009), and is thus not applicable to the appellants' claims. This argument fails for three reasons. First, the language quoted from the *Richards* case does not apply because appellants' claims, unlike the claims in *Richards*, are claims for discriminatory compensation. Second, the discriminatory compensation decision actually alleged by the appellants and addressed by the district court was not the passage of the Schluter Ordinance. The white officers do not object to the City's treatment of Officer Schluter; they just want what they say would be the same treatment. The allegedly discriminatory decision therefore was the implicit denial of the appellants' December 11, 2002 request for the same prior service credit that was given to Schluter. See, *e.g.*, *Mikula v. Allegheny County*, 583 F.3d 181, 186 (3d Cir. 2009) (finding that the failure of an employer to respond to a request for a raise qualified as a "compensation decision" within the meaning of the Ledbetter Act "because the result is the same as if

the request had been explicitly denied"). Third, even if the City were correct on these points, the argument that the statute of limitations has run on the original compensation decision assumes rather than proves the inapplicability of the paycheck accrual rule. The relevance of the argument depends on whether or not the paycheck accrual rule applies—the City obviously assumes it does not. Because the rule applies for the reasons we have explained, a new statute of limitations period began to run with each paycheck. The district court's grant of summary judgment on the Section 1983 claims after November 10, 2003 is reversed.

III. *Preclusive Effect of State Court Decision*

Finally, we consider whether the earlier state court litigation precludes further litigation of appellants' claims even if they get the benefit of the paycheck accrual rule. "The doctrine of [res judicata or] claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits, finality trumps." *Czarniecki v. City of Chicago*, ___ F.3d ___, 2011 WL 181471, at *3 (7th Cir. Jan. 21, 2011). Because the earlier suit in this case was a state court judgment, we look to Illinois law to determine whether res judicata bars the appellants' claims. *Walsh Const. Co. of Illinois v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 153 F.3d 830, 832 (7th Cir. 1998). In Illinois, res judicata applies when: (1) there is a final judgment in the first suit; (2) there is identity of the causes of action (identified by a set of "operative facts"); and (3) there is an identity of parties (directly

or through privity of interest). *Id.*; *Czarniecki*, 2011 WL 181471, at \*3. The district court properly decided that res judicata barred recovery for claims arising before the date of the final judgment in the state court suit—November 10, 2003. If the appellants had been successful in the state court case, they could have recovered for damages up until November 10, 2003.

The City argues that the appellants' later claims are also barred by res judicata even if the paycheck accrual rule applies. We disagree. As discussed above, following the Ledbetter Act, we recognize that each paycheck resulting from the original discriminatory act is a separate cause of action triggering its own statute of limitations. As the district court found, these independent causes of action do not share an "identity of cause of action" with the state court action. They are allegedly "wrongful events . . . separated by time and function" from the allegedly discriminatory paychecks paid to the appellants before the state court case was decided. *Perkins v. Board of Trustees of University of Illinois*, 116 F.3d 235, 237 (7th Cir. 1997).

We should not be understood as opening the door to endless re-litigation of allegedly discriminatory decisions that affect compensation for many years. A critical point here is that the state court did not rule on the merits of the discrimination issue, but ruled only on statute of limitations grounds. Therefore, there is no collateral estoppel or issue preclusion problem that would prevent these plaintiffs from receiving a first decision on the merits of their discrimination claims. See *id*. (holding that the university's prevailing in the first case on statute of limitations grounds

did not mean that there was issue preclusion or collateral estoppel as to the plaintiff's later claims of new discrimination). The appellants may thus proceed with their discrimination claims for allegedly discriminatory compensation paid after November 10, 2003.

The appellants argue that the state court decision should have no preclusive effect at all on their Title VII claims because they had not yet received their EEOC "right-to-sue" letter, so the Title VII claim could not have been brought in their earlier state court suit. We rejected essentially the same argument in *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995) (finding that plaintiff "could have delayed the filing of his first suit or requested that the court postpone or stay the first case. What he cannot do, as he did here, is split causes of action and use different theories of recovery as separate bases for multiple suits."); see also *Huon v. Johnson & Bell, Ltd.*, 2010 WL 3404967, at *3 (N.D.Ill. Aug. 26, 2010) ("the Seventh Circuit has addressed that precise issue and held that a plaintiff cannot rely upon the fact that he has not yet received a right-to-sue letter from the EEOC to escape the effects of res judicata"). The appellants' argument that they could not bring their Title VII claims in state court is meritless, and the state court decision must be given preclusive effect for the appellants' claims before November 10, 2003.

The judgment of the district court is AFFIRMED IN PART, with respect to the dismissal of all claims arising before November 10, 2003 and with respect to Officer Shaffer's claims for monetary damages before January 19, 2005. In all

other respects the judgment is REVERSED and the case is REMANDED for proceedings consistent with this opinion.