[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2011
JOHN LEY
CLERK

_____

No. 10-15370
Non-Argument Calendar

_____

D.C. Docket No. 3:07-cv-00290-TJC-TEM

JOHN C. TARMAS,

                                                        Plaintiff-Appellant,

versus

SECRETARY OF THE NAVY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 6, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

John Tarmas, proceeding *pro se*, appeals the district court's order granting

summary judgment in favor of his employer, the Secretary of the Navy (Secretary)

in this disability discrimination and retaliation action. After a thorough review of the record, we affirm.

I. Background

Tarmas, a civilian employee with the Navy for over 25 years, began experiencing neurological symptoms, such as tingling and numbness, and periods of insomnia in 1999. He was treated by Dr. Victor Maquera and eventually diagnosed with delayed sleep phase syndrome and a mood disorder. In 2001, Tarmas's insomnia was extreme and began interfering with his scheduled work hours. After speaking with supervisors James Russeau, Richard Reckert, and Paul Heagney, he arranged a flexible work schedule; instead of a defined start time, Tarmas could begin his shift at any time and work for an eight-hour period.

By 2003, however, Tarmas's direct supervisor, who was now Andrew Wojtyla, found that the inconsistent schedule was becoming a problem in terms of safety issues and team effectiveness. Tarmas often did not arrive at work until mid-afternoon. In July, Reckert met with Tarmas and informed him that the flexible schedule needed to be changed and requested that Tarmas submit medical documentation. Dr. Maquera submitted an evaluation in September 2003 outlining Tarmas's diagnosis and explaining that Tarmas had no limitations in his abilities to work. Despite Tarmas's medical conditions and work schedule, he

routinely received performance awards and acceptable evaluations.

In January 2004, Reckert, Russeau, Wojtyla, and Tarmas met again to discuss Tarmas's schedule. Reckert and Russeau proposed a flexible schedule that would permit Tarmas to start work as late as 10:30 a.m. when necessary, instead of his assigned 7:30 a.m. start time. Tarmas rejected the proposal and stated that he would use sick or annual leave to account for his hours when he arrived late. In a follow-up email, Reckert requested that Tarmas provide more medical information to support his request for additional flexibility in his schedule.

In May 2004, after he had used all of his available leave, Tarmas requested the flexible schedule proposed in January, and he submitted a report from Dr. Maquera indicating that his condition was chronic. Dr. Maquera did not, however, identify any necessary accommodations. In a second letter, Maquera explained that Tarmas's condition was exacerbated by cross-country travel, which could require altering Tarmas's work hours following a trip. Thereafter, Tarmas's supervisors presented him with a flexwork agreement, setting his regular hours as 7:15 a.m. to 3:45 p.m., with the following modifications following cross-country travel: Tarmas would start at 10:15 a.m. the first two days after travel, at 9:15 a.m. the next two days, and at 8:15 a.m. the last day before returning to his regular schedule. On July 1, 2004, Russeau sent Tarmas a memo setting out the flexwork

3

agreement. Tarmas believed the accommodation was insufficient because it failed to address other medical issues that could impact his sleep disorder and cause him to miss work.

The following month, Tarmas requested an immediate transfer to an open position in another department; Russeau denied the request because there was no transition plan in place for Tarmas's current position. Tarmas sought other transfers in October 2004 and February 2005, but each was denied because he lacked the necessary qualifications for the new positions.

In May 2005, Tarmas traveled to California for a work project. Instead of returning on Friday, he stayed over and flew home on Sunday. Tarmas sent Russeau an email to verify that he did not need to take leave for the Friday because his Sunday travel would "cancel[] out" the Friday. Russeau advised Tarmas that he needed to take leave for the Friday. By email, Tarmas informed Russeau that he disagreed with Russeau's determination that he was required to submit a leave request.[1]

Tarmas continued to experience difficulty arriving at work on time for his morning shift. On August 10, 2005, Tarmas called in late, notifying Russeau at 9:39 a.m. that he was running late and would be at work by 11 a.m. Tarmas did

---

[1] In the end, Tarmas was not charged with leave for that day.

not arrive until 11:30 a.m., at which point he submitted a leave request for four hours of leave. Russeau denied the leave request because Tarmas had not called his supervisor within two hours of his start time, as required by the call-out procedures. On August 15, Tarmas was late and submitted a leave slip, citing heavy traffic as the cause of his delay. Russeau denied the leave request and listed the absence as unauthorized. Then on August 16, Tarmas was late again due to heavy traffic. Russeau denied his leave request. Tarmas filed an informal complaint with the EEOC, which initiated an investigation.

On August 18, 2005, Tarmas received a "letter of caution," citing possible abuse of the leave system, unauthorized absences, and failure to adhere to the leave procedures. According to the Navy's human resources manual, a letter of caution is not a disciplinary action. The letter informed Tarmas that it would not be placed in his personnel file nor would it be counted as a prior disciplinary action for purposes of future discipline.

On September 2, 2005, Wojtyla sent Tarmas an email advising him of issues with his job performance, specifically that there were technical errors in some of Tarmas's reports and that the information cited was outdated, inaccurate, or incomplete. Wojtyla also forwarded his concerns to Russeau. Tarmas responded with an email blaming Wojtyla for the problems. Nevertheless, Tarmas received

5

an acceptable performance rating in September 2005.[2]

On September 28, 2005, Tarmas filed a formal complaint with the EEOC alleging discrimination and retaliation. On October 6, 2005, Tarmas emailed Russeau about additional accommodations, requesting that he be allowed to work up to two hours a day flextime when needed, receive liberal approval of leave time for all hours beyond the flextime, and be given liberal approval of leave without pay if medically necessary. Russeau asked Tarmas to provide medical documentation to support his request. In November, Tarmas submitted a letter from Maquera explaining that Tarmas's condition was stable with medical therapy and the accommodations for west coast travel. Maquera explained, however, that Tarmas had recently developed bronchitis, which had aggravated his sleep disorder. Maquera indicated that no other accommodations were generally necessary, except if Tarmas suffered from other illnesses that would trigger the insomnia. Based on this medical information, Russeau denied Tarmas's requested accommodations, but recognized that Tarmas might need to report to work up to two hours late on occasion.

Following the EEOC investigation, Tarmas received a right-to-sue letter.

---

[2] Notably, he would also receive performance awards in September 2006, June 2007, and July 2008.

6

He then filed the instant complaint alleging disability discrimination and retaliation under the ADA, the Rehabilitation Act, and Title VII.[3] In his *pro se* complaint, Tarmas alleged the following specific acts of discrimination and retaliation: (1) he was denied leave on May 10, 2005; (2) he was subjected to stricter call-out requirements than other employees on May 12, 2004 and August 10, 2005; (3) he was denied leave on August 15 and 16, 2005; (4) he received a letter of caution on August 18, 2005; (5) he received an email citing him for poor job performance on September 2, 2005, after he filed an informal discrimination complaint; (6) he was denied transfers in June, August, and October 2004 and in February 2005; and (7) he was denied reasonable accommodations in July 2004.

The district court granted the Secretary's motion for summary judgment. First, the court found that the only claims of disability discrimination properly before it were the leave requests for August 10, 15, and 16, 2005, and the letter of caution because the other claims fell outside the 45-day window and each event was a discrete act and not part of a continuing violation. In reaching this conclusion, the court rejected Tarmas's claim that he was unaware the conduct was discriminatory until August 2005. On the merits, the court found that Tarmas

---

[3] Tarmas initially included age discrimination claims, but withdrew those claims early in the litigation.

could not show a prima facie case of discrimination because, even assuming he

was disabled and was otherwise qualified, he had suffered no adverse employment

action. The court then found that there was no claim for reasonable

accommodation pending because the July 2004 request was time-barred and the

October 2005 request was not included in the complaint. Finally, the court

considered Tarmas's retaliation claim and found that the job performance letter in

September 2005 was not an adverse action. Tarmas now appeals.[4]

## II. Standard of Review

---

[4]The parties engaged in a lengthy and contentious discovery period, during which Tarmas sought to compel the Secretary to complete discovery because Tarmas disputed 36 of the 71 responses. The magistrate judge granted the Secretary's motion to strike because the motion failed to comply with the local rules and Tarmas had failed to consult with opposing counsel in good faith prior to filing the motion. Tarmas filed additional 90-page motions to compel discovery. The magistrate judge reviewed the disputed interrogatories and granted, relevant to this appeal, Tarmas's request for resumes of those hired for the positions Tarmas sought. Thereafter, Tarmas filed a motion to hold the Secretary in contempt for failing to comply with the motion to compel. The magistrate judge declined to hold the Secretary in contempt but did order compliance with the motion to compel. After the Secretary again failed to respond to Tarmas's satisfaction, Tarmas filed another motion for contempt for failure to comply with the court's order. The Secretary moved to compel Tarmas to submit to an independent medical examination. Tarmas opposed the motion and moved in limine to exclude the Secretary's medical expert. Tamras appealed each ruling to the district court. At a subsequent status hearing, the court admonished both parties to end needless filings and urged them to get to the merits of the case. The court ordered the Secretary to comply with the pending discovery orders and denied Tarmas's motions seeking discovery of bonuses given to supervisors because the supervisors were not relevant comparators. The court also denied Tarmas's appeal of the denial in part of the motion to compel, and the denial of the motion for contempt, but kept the sanctions issue open. The court also instructed Tarmas to undergo an independent medical examination. Still dissatisfied with the Secretary's discovery response, Tarmas filed another motion to compel and motions for sanctions, citing discovery violations and spoilation of evidence. The court denied the motion to compel and later denied the motion for sanctions. Tarmas now appeals the district court's discovery rulings. After a thorough review of the record, we conclude that the district court did not abuse its discretion and affirm without further discussion.

8

We review a district court order granting summary judgment *de novo*, viewing all of the facts in the record in the light most favorable to the non-moving party. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (quoting Fed.R.Civ.P. 56(c)). "A genuine factual dispute exists if the jury could return a verdict for the non-moving party." *Id.* (internal quotation marks omitted).

III. Discussion

A.  Timeliness of Tarmas's claims

Tarmas argues that all of his claims were timely under the Lilly Ledbetter Fair Pay Act of 2009 because he was denied wages and compensation in the form of accrued leave, and the denials continued on a daily basis until he filed his EEOC complaint. Although he concedes that he did not raise this issue below, he asserts that the court may consider it because it raises a question of law.

The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (citation omitted); *see also* 29 U.S.C. § 794(a); 42

9

U.S.C. § 1981a(a)(2). A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII. 42 U.S.C. §§ 2000e-5, 2000e-16; 29 U.S.C. § 794a; *Doe v. Garrett*, 903 F.2d 1455, 1459-60 (11th Cir. 1990). Under these regulations, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). If the employee shows that he was not notified or otherwise aware of the time limits, then he may seek an extension of the 45-day period. 29 C.F.R. § 1614.105(a)(2). The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a prerequisite that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."[5] *Zipes v. Trans World Airlines, Inc.*, 455 U.S.

---

[5] To the extent that Tarmas claims he is entitled to equitable tolling because he was unaware of the discrimination until August 2005, that claim fails. Tarmas had been experiencing difficulties with the call-out requirements and requests for accommodations as early as 2003. Beginning in 2003, Tarmas routinely challenged his supervisor's decisions regarding his leave, his requested transfers, and his requested flexible schedule. He cannot now claim that he was unaware that he might have a claim for discrimination.

385, 393 (1982).

Here, Tarmas first contacted an EEOC counselor on August 15, 2005. Thus, any employment action that occurred more than 45 days prior to August 15, 2005 is untimely. To circumvent this 45-day requirement, Tarmas alleges that the discriminatory acts were ongoing violations. But this claim fails; the acts of which Tarmas complains were all single and discrete acts and did not constitute continuing violations. *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 970 (11th Cir. 2008).

In another effort to circumvent the exhaustion time period, Tarmas argues that his claims were timely under the Lilly Ledbetter Fair Pay Act of 2009 (the Act), Pub. L. 111-2, 123 Stat 5(2009). The Act was intended to "clarify that a discriminatory compensation decision or other practice that is unlawful under such Acts occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice, and for other purposes." Pub. L. 111-2, 123 Stat. 5 (2009). The Act was a direct response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which imposed a more restrictive interpretation of the limitations period for challenging discrimination in pay. "The Act amends [the Rehabilitation Act] by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination

11

resets with each paycheck affected by a discriminatory decision." *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th Cir. 2011). Under the Act, an "unlawful employment practice" occurs in the following situations: (1) "when a discriminatory compensation decision or other practice is adopted," (2) "when an individual becomes subject to a discriminatory compensation decision or other practice," and (3) "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." *Id.* at 1024-25 (citing 42 U.S.C. § 2000e–5(e)(3)(A)). The Act did not, however, alter the limitations period for discrete employment actions. *See Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010).

Although this court has yet to address the issue, we conclude that we need not do so here because Tarmas failed to raise the issue of discrimination in pay before the district court. A review of Tarmas's complaint shows that he alleged that each denial of leave time and each refusal to transfer him was an unlawful employment action under the Rehabilitation Act; he did not argue that each denial impacted his compensation or benefits. *See, e.g. Noel*, 622 F.3d at 272-73 (explaining that the Act does not apply to failure-to-promote claims). Therefore,

because Tarmas raises this argument for the first time on appeal, we decline to address it.[6] Accordingly, we agree with the district court's conclusion that any actions outside the 45-day window were untimely.

### B. Discrimination Claims

When, as here, summary judgment is granted based on circumstantial evidence, we analyze the case using the shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999) (holding that the *McDonnell Douglas* analytic framework applies to retaliation claims).[7] Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate,

---

[6] We note that other circuits to address the issue have not applied Tarmas's interpretation. *See Noel*, 622 F.3d at 273, n.6 (holding that the Act was designed to address discrimination in compensation but not other types of employment discrimination); *see also Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010); *Galera v. Johanns*, 612 F.3d 8, 12 n.8 (1st Cir. 2010) (discussing the timeliness of discrete acts of discrimination such as termination, failure to promote, denial of transfer, and refusal to hire). Notably, the Eleventh Circuit has also defined "discrimination in compensation" in the same manner as the D.C. Circuit, *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991), implying that the Act would not apply to Tarmas's claims.

[7] We apply the same standards under the Rehabilitation Act, the ADA, and Title VII and uses the same framework to analyze these claims as it does for a claim under Title VII. *Ellis v. England*, 432 F.3d 1321, 1323-24 (11th Cir. 2005); *Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999). Thus, cases involving the ADA are precedent for those involving the Rehabilitation Act. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also* 29 U.S.C. § 794(d).

non-retaliatory reason for the challenged employment action. *Id.* If the employer proffers such an explanation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's explanation is merely a pretext. *Id.* A claimant cannot establish pretext by simply demonstrating facts that suggest discrimination or retaliation, but must specifically respond to each of the employer's explanations and rebut them. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007). A reason is not pretextual unless it is shown both that the reason was false, and that discrimination or retaliation was the real reason. *Brooks*, 446 F.3d at 1163. If "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason," or showing that the decision was based on erroneous facts. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

"To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999). To establish the third element, an individual must show that he has suffered an adverse employment action because of his disability. *Doe v. Dekalb*

14

*Cnty. Sch. Dist.*, 145 F.3d 1441, 1445 (11th Cir. 1998). It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1074 (11th Cir. 1996). Rather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action "solely by reason of" his handicap. 29 U.S.C. § 794(a). An adverse action is one that causes a "serious and material change in the terms, conditions, or privileges of employment," and is viewed from whether a reasonable employee would find the action to constitute a serious and material change. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238–39 (11th Cir. 2001).

In this case, the district court properly concluded that Tarmas had not shown discrimination in connection with the call-out requirement on August 10, 2005, the denial of leave of August 15 and 16, 2005, and the letter of caution.[8] Even assuming that Tarmas has a disability,[9] the events of which Tarmas complains

---

[8] We may affirm on any grounds supported by the record, even if those grounds differ from those given by the district court. *CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1244 (11th Cir. 2003).

[9] Under the ADA, a person is disabled if, *inter alia*, he suffers from a physical or mental impairment that substantially limits a major life activity. 29 U.S.C. § 705(9)(B); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1310 (11th Cir. 2007). The statute does not define major life activity, but the EEOC regulations list tasks such as walking, talking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). In 2009, Congress passed amendments to the ADA, known as the ADAAA, which expanded coverage. 42 U.S.C. § 12102. Although Tarmas urges this court to apply the ADAAA's definition of disability, this court

were not adverse actions or were not based on his disability.  The record shows that the Secretary gave Tarmas liberal leave to accommodate his medical condition, but that Tarmas was dissatisfied with the schedule imposed.  Tarmas's supervisors explained that the decision to discuss leave time with Tarmas and the basis for their concern that he was abusing leave was related to the inability of the department to schedule meetings because there was no certainty as to when Tarmas would be at work.  Thus, the decision to shift Tarmas back to a definite work schedule, when viewed from the reasonable employee perspective, was not a serious and material change to Tarmas's working conditions.

As to the letter of caution, the Navy's own handbook indicates that a letter of caution is non-disciplinary.  And the letter Tarmas received explicitly stated that it was non-disciplinary and would not be considered in any future disciplinary actions.  Tarmas did not experience any changes in the terms or conditions of his employment as a result of this letter.  In light of this, it cannot be said that the letter was an adverse employment action.

## B. Retaliation

To establish a prima facie case of retaliation, a plaintiff may show that:

---

has never held that the ADAAA is retroactively applicable.  Other circuits have concluded that the amendments are not retroactively applicable.  *See Kemp v. Holder*, 613 F.3d 231 (5th Cir. 2010); *Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162 (9th Cir. 2009).

(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). There is no dispute that the filing of a claim with the EEOC is a "statutorily protected activity." *See id.*

Regarding an adverse action, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The acts must be material and significant and not trivial. *Id.* at 68. In addition, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[10] *Id.* (quotation omitted). Further, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

To show a causal relationship, Tarmas must show that the decision-maker was aware of the protected activity, and that the protected activity and the adverse action were not wholly unrelated. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

---

[10] The term adverse action is broader in the retaliation context than in the racial discrimination context. *Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co.* 548 U.S. 53, 68 (2006)).

Here, we conclude that Tarmas failed to satisfy the prima facie case. Tarmas has not shown that the email citing poor job performance was a materially adverse action. Receiving this email did not dissuade Tarmas from filing and pursuing his discrimination complaint. Moreover, considering the letter in context, there was nothing retaliatory about a supervisor notifying an employee of problems with his work. In any event, after he received the letter, Tarmas also received an acceptable performance review, and he has since received several cash bonuses.

Additionally, Tarmas cannot establish a causal connection. Although the general rule is that close temporal proximity between the protected activity and the adverse action is sufficient to establish the causal connection, *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), Tarmas still must show that the decision-maker was aware of his protected activity. Here, there was no evidence that Wojtyla knew of Tarmas's EEOC complaint when he sent the September email. Thus, although Tarmas received the email only about two weeks after he spoke with the EEOC, there is no evidence in the record that Wojtyla knew of the complaint.[11]

---

[11] It appears from the record that the EEOC counselor did not contact Wojtyla until September 13.

IV. Conclusion

For the foregoing reasons, we affirm the district court.

**AFFIRMED.**