In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3391

DARRIN GRUENBERG,

*Plaintiff-Appellant*,

*v.*

DEBRA GEMPELER, Captain, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-CV-00455—**William C. Griesbach**, *Judge.*

ARGUED APRIL 4, 2012—DECIDED SEPTEMBER 26, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and MANION, *Circuit Judges*.

MANION, *Circuit Judge.*    While incarcerated for burglary, Darrin Gruenberg seized a set of keys from a prison security guard and swallowed them. He was taken to a hospital, where an x-ray showed that the keys were lodged in his abdomen. A physician told the prison officials that Gruenberg would probably pass the keys naturally within five days. They returned him

to the prison and kept Gruenberg naked and in restraints for five days until he passed the keys. After five days, Gruenberg had not yet passed them and surgery was needed to remove them. Gruenberg sued the officials, claiming they violated his Eighth Amendment right to be free from cruel and unusual punishment by keeping him restrained for five days. The district court granted summary judgment in favor of the defendants, and because the officials have qualified immunity, we affirm.

I.

On April 19, 2006, a security officer at Waupun Correction Institution ("Waupun") was administering medication to a prisoner, Darrin Gruenberg,[1] when Gruenberg pulled the officer's arm inside his cell and grabbed the officer's key ring. The key ring held three keys: a handcuff key, a key to activate cell doors, and a key for the padlock on waist restraints. The officer ordered Gruenberg to return the keys, but Gruenberg exclaimed, "watch this," and proceeded to place each key into his mouth and then swallow each one.

This set off a security alert in the prison, and the warden was immediately notified. Gruenberg was

---

[1] Gruenberg began serving a sentence for burglary in 1999. Since first entering the Wisconsin Department of Corrections, he has accumulated more than 230 misconduct reports at seven different facilities. *See Gruenberg v. Schneiter*, 474 Fed. Appx. 459 (7th Cir. 2012).

taken to the emergency room at Waupun Memorial Hospital for x-rays to determine the location of the keys. The x-ray confirmed that they were in his abdomen. The physician who treated Gruenberg believed that the keys would pass through his system within five days if Gruenberg took medication to help them pass. Gruenberg agreed to take the medication, and was returned to Waupun.

The warden, the prison's medical staff, and the prison's security staff developed a protocol for Gruenberg until the keys passed through his system. Gruenberg was placed in Waupun's Health and Segregation Complex ("HSC"), the unit that houses inmates with pending disciplinary hearings for rule violations, who have been found guilty of rules violations, or who are in administrative confinement. During his confinement in the HSC, which lasted five days, he was kept naked and restrained for approximately 22 to 23 hours per day. Specifically, Gruenberg was restrained in a chair during the day for twelve hours, and restrained to a bed for twelve hours during the evening.[2] The prison officials thought it was necessary to keep Gruenberg restrained to prevent him from re-swallowing the keys

---

[2] Gruenberg was restrained with RIPP restraints, which are polypropylene belts approximately two inches wide. They are adjusted with Velcro closures. The restraints were placed around Gruenberg's upper chest, wrists, thighs, and legs.

after he had passed them.[3] Twice per shift, on the first and second shifts, Gruenberg was released from the chair or bed and allowed to walk for 30 minutes.

During the five-day period, Gruenberg complained of being cold and repeatedly asked for a blanket.[4] This request was denied because, the prison officials asserted, a blanket would restrict the view of security staff who monitored Gruenberg to ensure he was breathing. The prison staff also thought it was necessary to monitor any possible expulsion of the keys from Gruenberg, as one of the keys he swallowed was a master key that would open any restraint used in the prison and another key could open any cell door in the prison. Gruenberg was fed "nutri-loaf" (a sort of nutritional food loaf which does not require utensils to eat) while restrained, and was denied permission to brush his teeth or wash his hands (but was permitted to shower once). Gruenberg also complained that he was forced to lie in his own feces on two occasions, despite the officials' assertion that Gruenberg was allowed to use the bedpan and urinal whenever he asked to do so.

The security staff checked on Gruenberg every 15 minutes while he was restrained, and nurses from the

---

[3] This has actually happened. *See, e.g.*, *Malone v. Oklahoma*, 168 P.3d 185, 213 (Okla. Crim. App. 2007) (an inmate who secretly brought a key into jail by swallowing it retrieved it from his feces after passing it and then swallowed it again).

[4] The record shows that the indoor cell temperatures of the area in which Gruenberg was restrained varied between 72 degrees and 77 degrees during the five-day period.

prison's Health Services Unit checked his condition every four hours. The HSC's clinical staff also saw him regularly. All told, during the five-day period Gruenberg was restrained he was checked by nurses 31 times and assessed by the clinical staff nine times. He was also visited by the Waupun Psychological Services Staff each day, who noted in several reports that Gruenberg was frustrated by the situation but remained cooperative.

By April 24 (the fifth day), Gruenberg was experiencing pain in his lower spine, tailbone, buttocks, and joints. He developed cuts and raw skin on his wrists and ankles from the restraints. He was taken to the hospital for another x-ray, which revealed that the keys had not moved from his abdomen. The prison staff then determined that Gruenberg no longer needed to be restrained because it was unlikely that he would be able to pass the keys naturally. He was placed in a "dry cell" in the prison's Health Services Unit (a dry cell being one in which the water has been turned off so that the toilet does not flush). The health services staff could monitor Gruenberg in this cell and, being isolated, it was impossible for Gruenberg to pass the keys to another inmate if he were to expel them naturally. Additional security staff were assigned to sit outside Gruenberg's cell to monitor his bowel movements to determine if the keys passed.

The keys did not pass, and on April 26, Gruenberg was again taken to the hospital where he underwent an endoscopy and colonoscopy to remove the keys. The

endoscopy procedure successfully removed two of the keys, but the third key (the padlock key) remained in his body. Finally, on May 4, Gruenberg passed the remaining key naturally.

Gruenberg filed a pro se suit against some 25 staff members and officials at Waupun on May 5, 2009, asserting that the defendants violated his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. Gruenberg also filed a motion requesting the appointment of counsel. On August 24, 2009, the district court denied Gruenberg's request for counsel, finding that Gruenberg demonstrated his "ability to petition this court for redress of his grievances." On December 17, 2009, the defendants filed a motion for summary judgment, and on September 30, 2010, the district court granted summary judgment in favor of the defendants on all claims. The district court ruled that a trier of fact could find that Gruenberg's Eighth Amendment rights were violated, but held that the doctrine of qualified immunity shielded the defendants from suit. Gruenberg's Fourteenth Amendment procedural due process claim was dismissed on the grounds that it was "better conceptualized under the Eighth Amendment," see *Bowers v. Pollard*, 345 Fed. Appx. 191, 196 (7th Cir. 2009), not the Fourteenth Amendment. Gruenberg appealed in February 2011, and in June 2011 we determined that counsel should be appointed to represent Gruenberg on appeal. We issued an order striking the previously-filed briefs, and Gruenberg, now represented by counsel, filed his appeal in November 2011.

II.

We review the district court's grant of summary judgment de novo. *Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 646 (7th Cir. 2011). In considering the district court's grant of summary judgment, we construe all facts and draw all inferences in favor of Gruenberg, and will affirm if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

Gruenberg argues that because he was kept immobilized, naked, cold, and in pain for five days, the defendants deprived him of basic human needs and violated his clearly established rights under the Eighth Amendment. The defendants counter that the novelty of Gruenberg's situation and his past history of being a difficult prisoner necessitated restraining Gruenberg, that the unique circumstances presented by Gruenberg's situation demonstrate that none of the defendants could have been on notice that they were violating a clearly established constitutional right, and that the district court properly found that none of the defendants acted with deliberate indifference to Gruenberg's needs. Thus, they argue, the district court correctly applied qualified immunity.

We review the validity of a qualified immunity defense de novo. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). Qualified immunity shields government officials from liability under Section 1983 "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional

rights of which a reasonable person would have known." *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000). It protects "all but the plainly incompetent or those who knowingly violate the law. . . . If officers of reasonable competence could disagree on the issue [of whether or not an action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To defeat a claim of qualified immunity, Gruenberg must show that the defendants violated a constitutional right and demonstrate that the right in question was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Thus, when analyzing a qualified immunity defense, courts consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quotations omitted).

Gruenberg claims that the defendants violated his constitutional right to be free from cruel and unusual punishment. Specifically, he argues that when the defendants restrained him naked for five days, they deprived him of basic human needs and thus violated

his clearly established rights under the Eighth Amendment. To defeat the defense of qualified immunity, Gruenberg must present evidence from which the finder of fact could conclude that the conditions of his confinement resulted in "the denial of the minimal civilized measure of life's necessities," and that the defendants were "deliberately indifferent" to the conditions in which he was held. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference" to a prisoner's serious medical needs is cruel and unusual punishment). The Eighth Amendment proscribes conditions that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has held, however, that "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Indeed, "conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Id.*

Even if we were to find, at least in some context, that the conditions under which Gruenberg was confined for five days could have amounted to cruel and unusual punishment, the defendants here are entitled to qualified immunity. As Judge Griesbach reasoned in his opinion, "[t]his case presents a classic situation in which the doctrine [of qualified immunity] is required to shield

officials acting in good faith in responding to a unique situation that involved both inmate health and prison security." While the condition in which Gruenberg was held was undoubtedly uncomfortable, there is no evidence in the record that demonstrates that any member of the prison staff showed "deliberate indifference" to Gruenberg's health or safety. In fact, the record shows otherwise—Gruenberg was monitored constantly to ensure that he was not in danger, and was visited 31 times by nurses and nine times by the prison's clinical staff. The prison's psychological staff also visited Gruenberg several times to check on his mental health. As Judge Griesbach rightly noted, such frequent medical and mental health monitoring is inconsistent with claims that the defendants intentionally or recklessly subjected Gruenberg to cruel and unusual punishment.

Furthermore, instead of forcing Gruenberg to undergo immediate surgery to remove the keys (a decision which could have raised more serious Eighth Amendment concerns than presented here), the defendants relied on the advice of a physician who thought that Gruenberg would pass the keys within five days. And while keeping Gruenberg in restraints for five days ultimately proved ineffective in light of the fact that he had two of the keys removed later via a colonoscopy and the third passed naturally while he was held unrestrained in a dry cell, qualified immunity protects decisions made in the moment, when the benefit of hindsight

is not available.[5] As we have previously held, qualified immunity depends "upon all the circumstances as they reasonably appeared to the official at the time the challenged conduct took place." *Crowder v. Lash*, 687 F.2d 996, 1006-07 (7th Cir. 1982).

Thus, the defendants here faced what Judge Griesbach called an "unprecedented breach of security": an exceptionally disruptive prisoner with over 230 documented citations for misconduct who stole and then swallowed three critical security keys.[6] The potential security problems this could cause are numerous, and the defendants had to ensure that Gruenberg would not pass the keys only to re-swallow them. While a less disruptive prisoner may not have merited such measures, Judge Griesbach rightly pointed out that the defendants here were in "uncharted waters" and that the Eighth Amendment "does not provide a clear roadmap as to how

---

[5] While our analysis here focuses on qualified immunity, we note that the Supreme Court rejected a post-hoc reasonableness approach that would deem acts as cruel and unusual punishment due to the fact that they appear to have been unnecessary in hindsight. *See Whitley*, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary . . . .").

[6] This is not the first time Gruenberg has attempted to steal a guard's keys. *See Gruenberg v. Schneiter*, 474 Fed. Appx. 459, 460 (7th Cir. 2012)

prison staff must treat an inmate who has swallowed a set of keys."[7] Furthermore, there is no evidence that the defendants acted with deliberate indifference or recklessness towards Gruenberg's health.[8] Qualified immunity is intended to shield officials from liability when they exercise judgment, and here they exercised that judgment when dealing with a difficult prisoner in a unique situation. For those reasons, we affirm the district court's grant of qualified immunity.

Gruenberg also raises a procedural due process claim under the Fourteenth Amendment, arguing that he has

---

[7] The district court also raises an interesting point: Gruenberg's situation involved more than 25 members of the prison staff, none of whom evidently thought the protocol developed for handling Gruenberg was unreasonable. While not dispositive, the fact that so many individuals found Gruenberg's treatment to be reasonable seriously undercuts Gruenberg's claim that a reasonable person would have been aware that this conduct violated Gruenberg's clearly established constitutional rights.

[8] While the defendants have qualified immunity, we hasten to note that the confinement and treatment of Gruenberg was not "punishment," let alone cruel and unusual punishment. The only thing unusual here was Gruenberg's extreme behavior: he grabbed a guard's arm, pulled it through the bars of his cell, seized the guard's key ring, said "watch this," and then swallowed the keys. This was obviously a serious security problem, and was exacerbated by Gruenberg's extensive history of misbehavior. However, in a different setting, with a less troublesome prisoner, keeping a prisoner in near-constant restraints, naked, in a cell under continual observation might constitute cruel and unusual punishment.

a liberty interest in avoiding being held in restraints for five days and that the defendants unconstitutionally deprived him of that interest when he was restrained without notice or an opportunity to be heard. In essence, Gruenberg argues that his restraint was punishment for swallowing the keys, and that he was deprived of the right to have a hearing before he was placed in restraints. The record is devoid of any evidence to support this claim, and in fact the record entirely supports the defendants' contention that placing Gruenberg in restraints was solely out of a concern for security.

Furthermore, we have found only two instances in which the Fourteenth Amendment's due process clause created a liberty interest in the context of a prison sentence: a transfer to a mental hospital, *see Vitek v. Jones*, 445 U.S. 480, 493 (1980), and the involuntary administration of psychotropic drugs, *see Washington v. Harper*, 494 U.S. 210, 221-22 (1990). Neither is implicated here, and we have previously held that claims such as those raised by Gruenberg here "are better conceptualized under the Eighth Amendment." *Bowers*, 345 Fed. Appx. at 196. Thus, we affirm the district court's grant of summary judgment in favor of the defendants on Gruenberg's procedural due process claim.

Gruenberg also argues that he should be allowed to advance claims against the defendants under the Fourth Amendment and under the Fourteenth Amendment substantive due process clause. However, Gruenberg mentions these arguments for the first time on appeal. He

concedes that he did not argue these issues because the district court refused to appoint counsel (see below). Nevertheless, "(i)t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Domka v. Portage County, Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (quotations omitted); see also *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996) (issues that are not raised in the district court in response to a motion for summary judgment are waived on appeal). Furthermore, as we noted above, Gruenberg's claims are better addressed under the Eighth Amendment. Thus, Gruenberg's Fourth Amendment and Fourteenth Amendment substantive due process claims are barred.

Finally, Gruenberg argues that the district court abused its discretion when it denied Gruenberg's request for counsel. We review a district court's decision to deny the appointment of counsel under 28 U.S.C. § 1915(e)(1) for an abuse of discretion, but will reverse only "upon a showing of prejudice." *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2009). Gruenberg repeatedly requested counsel to advance his claims here, and the district court denied those requests, finding that, in light of the numerous pro se lawsuits Gruenberg had filed in the past, Gruenberg was competent to litigate his case. "An indigent civil litigant may ask the district court to request an attorney to represent him *pro bono publico*." *Id.* at 649. When a litigant requests counsel, the district court must ask

(1) "has the indigent plaintiff made a reasonable attempt to retain counsel or been effectively precluded from making such efforts . . ."; and if so, (2) "given the difficulty of the case, did the plaintiff appear competent to try it himself?" *Id.* at 654.

Gruenberg did attempt to seek counsel, apparently contacting eight different attorneys to represent him. When he was unable to find counsel, he petitioned the district court to appoint counsel, arguing that his mental health issues and lack of education precluded him from conducting discovery and from briefing a response to a summary judgment motion. The district court disagreed, holding that, despite Gruenberg's mental health issues, he was competent enough to represent himself effectively and to argue his case.

The district court noted that the facts here were not so complicated that a reasonable pro se litigant could not advance them, and that Gruenberg had filed numerous motions and declarations detailing what had happened to him and the relief he sought, belying his incompetence claim. In fact, the district court pointed out that Gruenberg's presentation of the case was significantly above the capabilities of the average pro se litigant.[9] In light of this, the district court did not

---

[9] This is far from the only case Gruenberg has litigated pro se. He has filed at least six cases pro se in state and federal court alleging various violations during his incarceration. *See, e.g., Gruenberg v. Schneiter*, 474 Fed. Appx. 459 (7th Cir.); *Gruenberg*
(continued...)

abuse its discretion by ruling that Gruenberg was competent to advance his case and was not entitled to appointed counsel.

## III.

For the foregoing reasons, we affirm the judgment of the district court. The defendants are entitled to qualified immunity on Gruenberg's Eighth Amendment claims. Gruenberg's procedural due process claim fails, and he is barred from raising Fourteenth Amendment substantive due process or Fourth Amendment claims on appeal. Finally, the district court did not abuse its discretion when it denied Gruenberg's request for counsel.

AFFIRMED.

---

[9] (...continued)
*v. Lundquist*, 318 Fed. Appx. 424 (7th Cir. 2008); and *Gruenberg v. Pollard*, No. 08-cv-0524-slc, 2008 U.S. Dist. WL 4722531 (W.D. Wis. Oct. 22, 2008).