**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted October 25, 2013[*]
Decided November 6, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1727

| | |
|---|---|
| DEREK WILLIAMS, | Appeal from the United States District |
| *Plaintiff–Appellant,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 11-cv-411-slc |
| RICK RAEMISCH, *et al.,* | |
| *Defendants–Appellees.* | Stephen L. Crocker, |
| | *Magistrate Judge.* |

### O R D E R

Derek Williams, an inmate at the Green Bay Correctional Institution, sued the prison's warden and several members of its security staff, as well as the secretary of the Department of Corrections, under 42 U.S.C. § 1983, for First and Eighth Amendment violations. He contends on appeal that some of the defendants retaliated against him for

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

an earlier suit by issuing trumped-up conduct reports that landed him in administrative segregation. He also maintains that other defendants were deliberately indifferent to the cold temperatures in his cell during segregation. A magistrate judge, presiding by consent, *see* 28 U.S.C. § 636(c), entered summary judgment for the defendants. Although Williams presented evidence of a retaliatory motive, he did not rebut the defendants' evidence that they issued valid conduct reports independent of any retaliatory animus. He also lacked sufficient evidence that the named defendants were deliberately indifferent to the cold temperatures in his cell. Therefore, we affirm the judgment.

Williams asserts that William Swiekatowski and Robin Lindmeier, members of the prison's security staff, issued two conduct reports in 2010 as retaliation for Williams's then-ongoing prison-rights lawsuit against other officials. The first conduct report concerned an envelope that was returned to the prison as undeliverable. An unnamed mailroom worker received the envelope and forwarded it to Swiekatowski. The envelope bore Williams's return address and, according to Swiekatowski, contained two documents, one of which was a letter Williams had signed. The other document, unsigned, set forth a plan to create online accounts to sell clothing and split the proceeds with another person. Two weeks after receiving the mailing, Swiekatowski issued a conduct report to Williams for violating Wisconsin Administrative Code DOC § 303.32, which bars prison inmates from engaging in a business or enterprise. At the disciplinary hearing, Williams admitted writing, signing, and mailing the letter but denied writing and including the unsigned document that laid out the business plan. The hearing officer found Williams guilty and sentenced him to 90 days of administrative segregation. Williams unsuccessfully challenged the decision by appealing and filing a grievance.

About two months later, Lindmeier issued the second conduct report, accusing Williams of participating in a conspiracy to possess drugs. *See* WIS. ADMIN. CODE DOC §§ 303.43, 303.05. A confidential informant had told Lindmeier that Williams was offering to sell him drugs, that the drugs were being smuggled into the prison by Williams's fiancée during visits, and that another prisoner was holding the drugs in his cell and dealing them to inmates. This information was corroborated by a second confidential informant. Other evidence of the drug-smuggling operation included letters and recordings of phone conversations between Williams's fiancée and prisoners discussing unspecified payments, "orders," and a transaction with a prisoner that was "on hold." Based on this evidence, a hearing officer found Williams guilty and sentenced him to 360 days of administrative segregation. Because of security concerns,

Williams was not allowed to view the informants' two statements at the hearing, but he did receive summaries of the statements.

In the district court, Williams pursued his claims that Swiekatowski and Lindmeier were motivated to retaliate against him for his earlier suit. His evidence of their retaliatatory motive comes from two statements. First, a few months after Williams filed his earlier suit (and weeks before the two conduct reports were issued), Williams was in temporary lockup on suspicion of drug trafficking. Williams says that when he asked Swiekatowski why he was in lockup, the officer replied, "[w]hen you challenge the administration, bad things happen." Second, another prisoner swears in a declaration that Lindmeier told him that Williams's earlier lawsuit was "a big mistake." Swiekatowski and Lindmeier deny making these statements, and they are arguably ambiguous, but in reviewing the grant of summary judgment, we construe all facts and inferences in Williams's favor. *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012). We therefore assume that these statements imply that both Swiekatowski and Lindmeier were resentful because of Williams's earlier suit.

Williams also contended to the district court that Swiekatowski and Lindmeier acted on their resentment by trumping up the two conduct reports. First, he suggested that Swiekatwoski planted the business-plan document in Williams's returned envelope. To support this assertion, Williams cited the affidavit of a fellow prisoner, with whom Williams admits that he discussed the plan to sell clothing online. The prisoner swore that he, not Williams, created the document later found in the mailing. And Williams stated that he (Williams) did not insert the document in the envelope. Therefore, Williams concluded, Swiekatowski must have planted it. Second, Williams argued that Lindmeier acted on her retaliatory motive by falsely stating in her conduct report that two confidential informants had implicated Williams in the illegal trade. In discovery, Williams sought in-camera production of the statements of the confidential informants. The defendants did not produce them, explaining that after the disciplinary proceeding ended, prison administrative personnel misplaced the two statements and could no longer find them. The defendants also produced a statement from the hearing officer of the disciplinary hearing. That officer recalls seeing and reading the two informants' statements, their signatures, and their notary seals.

Williams also pursued his prison-conditions claim. He contended that, during the winter months that he spent in segregation, the temperatures in his cell were freezing. Williams filed a grievance about the cold temperatures, but the grievance was denied after a reading was taken and the temperature on his wing was found to be 74

degrees Fahrenheit. The warden affirmed the denial of Williams's grievance. Williams also sent two letters complaining about the cold—one to the warden and one to the secretary of the Department of Corrections—but received no response. He maintains that the warden, the secretary, and three staff members of the prison violated the Eighth Amendment by failing to remedy the temperature problems in his cell.

The defendants moved for summary judgment, which the district court granted. On the two First Amendment claims for retaliation, the court concluded that Swiekatowski's and Lindmeier's comments supported an inference of a retaliatory motive. *See Gomez v. Randle*, 680 F.3d 859, 866–67 (7th Cir. 2012); *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011); *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). But the court found that Williams offered no evidence to rebut the defendants' showing that the conduct reports were legitimate and would have been issued even without a retaliatory motive. *See Zellner v. Herrick*, 693, F.3d 371, 379 (7th Cir. 2011). On the cell-temperature claim, the court ruled that Williams offered no evidence that the three staff members knew about the cold temperatures; and the warden was not liable because he knew that Williams's grievance had been investigated and found to be baseless. Finally, the secretary of the Department of Corrections was not responsible for the temperatures in Williams's cell and therefore was not liable for deliberate indifference to a known risk to Williams's health or safety.

On appeal, Williams argues that he produced evidence from which a rational jury could infer that Swiekatowski and Lindmeier fabricated the two conduct reports to retaliate against him. We turn first to his claim about Swiekatowski's report. Williams argues that this report is retaliatory because Swiekatowski was annoyed with Williams for his earlier suit and therefore he planted the business plan. A rational jury could find that Swiekatowski planted the plan, Williams explains, because Williams himself did not insert it in his envelope, the conduct report does not provide (and Swiekatowski cannot recall) the name of the mail room worker who forwarded the envelope, and a fellow prisoner wrote the plan.

Although this evidence could persuade a rational jury that the earlier suit irritated Swiekatowski and that Williams did not insert the plan into his envelope, a jury would have no basis to find that Swiekatowski inserted it. Williams has no evidence that, like both Williams and the plan's author, Swiekatowski knew—before reading the mailing—that this business plan even existed, where it was located, or how to obtain it. Without any direct evidence that Swiekatowski planted the document or how he might have done so, a jury would be left to speculate about it, and "speculation

may not be used to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *see also Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003) (observing that, to survive summary judgment, a plaintiff must show both why and how law enforcement could have planted adverse evidence). Accordingly, summary judgment on this claim was proper.

This brings us to the retaliation claim about Lindmeier's conduct report. Williams contends that, because of her retaliatory animus, Lindmeier falsely stated in the conduct report that two confidential informants had given statements implicating Williams in drug trafficking. But there is no evidence from which a rational jury could draw the conclusion that the statements never existed. The officer who presided over the disciplinary hearing attests that he received, saw, and read the two informants' statements, and Williams offers no direct evidence to contradict the officer's attestation. Williams's only response is that, because prison personnel have misplaced the confidential informants' statements, he is entitled to an inference that the statements never existed. But whatever adverse inference can be drawn from the loss of the statements, Williams offers no legitimate reason to draw it against Lindmeier or Swiekatowski because he furnishes no evidence that either of them played any role in the misplacement of the documents. Williams's bare suspicion that the statements never existed is insufficient to create a genuine issue of material fact, *see Springer*, 518 F.3d at 484–85, and therefore summary judgment was proper.

Finally, we turn to Williams's Eighth Amendment conditions-of-confinement claim. He contends that the warden, the secretary of the Department of Corrections, and three members of the prison staff were deliberately indifferent to the freezing temperatures in his cell. The district court correctly granted summary judgment on this claim. First, Williams offers no evidence that the three staff members Williams sued knew about the temperatures in his cell, so these defendants cannot be liable. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). Williams's grievance was investigated by a different staff member, who concluded that the grievance was unfounded because the temperature in Williams's wing was 74 degrees Fahrenheit and there was no problem with the heating system. Second, the claim against the warden is also deficient. Although Williams wrote the warden complaining about the temperature in his cell, this letter is not enough to demonstrate deliberate indifference. The warden knew that Williams's grievance had been investigated and found to be without merit, so he was entitled to rely on that determination. *See Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012) (en banc); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 678–79 (7th Cir. 2012). Finally, the claim against the secretary of the Department of Corrections,

based on a letter that Williams sent to the secretary, also fails. The secretary did not supervise the day-to-day operations of the prison, so his receipt of Williams's letter is insufficient to establish liability for deliberate indifference. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009).

AFFIRMED.