**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 12, 2018[*]
Decided April 17, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1709

| | |
|---|---|
| BENARD McKINLEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 14-CV-1137 |
| | |
| JOSHUA SCHOENBECK, et al. | **Nancy J. Rosenstengel**, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

According to plaintiff Benard McKinley, an inmate at Menard Correctional Center, he spent over three years in administrative detention in a cell without heat or hot water and littered with rodent feces and dust. He sued various Menard officials in the prison's Internal Affairs and Intelligence units under 42 U.S.C. § 1983, asserting that they retaliated against him for honestly answering questions about gang activity at the prison and for filing a lawsuit. He also brought an Eighth Amendment conditions-of-

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

confinement claim against two defendants for ignoring his complaints about the conditions of his cell. We conclude that three of the four defendants were not entitled to summary judgment, so we vacate the judgment in their favor. With regard to the fourth defendant, we affirm.[1]

Because the defendants moved for summary judgment, we view the facts in the light most favorable to McKinley and draw reasonable inferences in his favor. *Groesch v. City of Springfield*, 635 F.3d 1020, 1022 (7th Cir. 2011). We do not vouch for the objective truth of the facts we assume for purposes of this appeal. McKinley contends that Menard officials placed him in investigative segregation and later administrative detention after interviewing him about gang activity because they did not like his responses. The first interview was conducted by correctional officers Chad Hasemeyer, Lance Phelps, Joshua Schoenbeck, and Warden Jaqueline Lashbrook in July 2012. Two more interviews occurred in July and August with all but Lashbrook present. In each interview, Hasemeyer asked McKinley whether he knew anyone with a leadership role in a gang, or in the prison's lexicon, a "Security Threat Group," and McKinley replied that he had no relevant information responsive to the questions. In the third interview, Phelps and Schoenbeck told McKinley that he "better give them something to go off of" and that they could be his "best friend or wors[t] nightmare." McKinley was placed in investigative segregation for 13 days after his second interview, and for a month after the third interview. During McKinley's second stint in segregation, Lashbrook told him that inmates who did not give officers the information they want could be placed in segregation at the officer's discretion.

McKinley was placed in administrative detention nine days after a fourth interview. The Administrative Detention Review Report filed after McKinley's first 90 days in segregation notes that McKinley was put there for the "safety and security" of the prison, as there was reason to believe McKinley was a gang member and had been involved in promoting assaults against prison staff. The report also cites McKinley's disciplinary history and behavior as a reason. McKinley was never charged

---

[1] The plaintiff spells his first name without an "r" before the "n" in his handwritten submissions, including his signatures. He also spelled out his name as "B-e-n-a-r-d" in his deposition. His Illinois offender profile, however, lists him as "Bernard," and this is how the defendants refer to him. Our clerk's office captioned this appeal with "Bernard" as plaintiff's first name, although his notice of appeal was captioned "Benard" and signed "Benard." We cannot account for the discrepancies, so we refer to the plaintiff as he refers to himself, as we did in a previous appeal, No. 14-1944, *Benard McKinley v. Pfister*. We have re-captioned the case accordingly.

with or found guilty of gang activity, planning assaults, or being dishonest in the course of the investigation. He remained in segregation for three years.

Throughout that time, we must assume, McKinley lived in a cell that did not have heat or hot water in the winter. The cell had a broken window that was covered with a plastic bag. The resulting cold temperatures, as well as dust in the cell, exacerbated McKinley's asthma. There were rodent feces and urine on the floor, and McKinley was not given cleaning supplies. McKinley complained about these conditions to both Schoenbeck and Phelps on multiple occasions and also filed grievances, to no avail. Phelps once replied to a complaint by saying, "So I guess you do not like my administrative detention cells huh? You gonna have to just deal with it." Schoenbeck generally ignored McKinley's complaints, but once told him that he "should not have decided to come to administrative detention."

Meanwhile, the interviews continued. Phelps questioned McKinley alone in November 2013, and McKinley explained that he was not a gang leader. Phelps then asked McKinley about a lawsuit he had filed, and told McKinley that "lawsuits will only make you stay in administrative detention longer." After this incident, McKinley filed a grievance in which he complained that he was "continuously put into segregation during the year of 2012, and ultimately put into administrative detention" because he lacked knowledge about the leadership of a security threat group.

An altercation with Phelps occurred a year later. McKinley was sitting on a bench waiting to be escorted back to his cell when Phelps approached him and began pushing him in the back. While repeatedly hitting him, Phelps told McKinley "you filed your lawsuit," and "you thought that was gonna [sic] get you out of administrative detention." McKinley did not respond and Phelps left, commenting to another officer that McKinley was a "bitch."

After McKinley was released from administrative detention in November 2015, he filed this civil-rights lawsuit. The district judge ultimately entered summary judgment in favor of the defendants.

To avoid summary judgment on his retaliation claims, McKinley must offer evidence tending to show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). We address each claim in turn.

McKinley argues that Hasemeyer, Lashbrook, Phelps, and Schoenbeck retaliated against him for truthfully answering during interviews that he was not a gang member and had no information to provide. The district judge concluded that this claim failed "at the outset" because McKinley's "refusal to become a confidential informant and provide information about other inmates … is not protected speech." In support of this proposition, the judge cited *Caffey v. Maue*, 679 Fed. Appx. 487 (7th Cir. 2016), a nonprecedential decision in which we ruled that a prisoner who "refused to talk" could be "compelled to disclose information." But there is an important distinction between *Caffey* and this case: McKinley did not refuse to cooperate with the defendants. We must assume, because it is a disputed fact, that he truthfully answered their questions in saying he did not know about gang leadership. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016).

McKinley had a right to tell the officers his account of events. *See Bridges*, 557 F.3d at 551. He, like other prisoners, "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Truthfully answering questions during an investigation, even if those answers are not what the officers want to hear, is consistent with a prison's penological objectives. *See Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995).

We have said that placement in administrative detention for periods much shorter than three years satisfies the burden to prove an adverse action likely to deter future First Amendment activity, *Babcock v. White*, 102 F.3d 267, 270, 275 (7th Cir. 1996), so McKinley established that element. And he also raised a genuine issue of material fact about whether there is "a causal link between the protected act and the alleged retaliation." *Roger Whitmore's Automotive Servs., Inc. v. Lake Cty. Illinois*, 424 F.3d 659, 669 (7th Cir. 2004). Temporal proximity is ordinarily not sufficient to establish causation, s*ee Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016), but McKinley does not rely on timing alone. He also has identified at least one statement by each of three defendants linking his interview responses and his placement in segregation. Lashbrook told McKinley that inmates who refused to cooperate could be "put under investigation at any time [the officers] felt like it." Phelps and Schoenbeck threatened McKinley during his interview that they could be his "best friend or wors[t] nightmare" and that he "better give them something to go off of." The timing of McKinley's placement in segregation coupled with these comments could allow a reasonable jury to infer that McKinley's protected speech was a motivating factor for his placement in segregation. *See id.* The same is not true of defendant Hasemeyer, however; although he

was involved in placing McKinley in segregation, McKinley presents no evidence other than timing that Hasemeyer had a retaliatory motive.

Phelps, Schoenbeck, and Lashbrook therefore must show that they would have punished McKinley regardless of his statements in these interviews. *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). To support their motion for summary judgment, the defendants submitted evidence that McKinley was placed in segregation for the "safety and security" of the prison; confidential informants reported that McKinley had been involved in promoting assaults against prison staff. The Administrative Detention Review Report filed after also cites "Behavior/Disciplinary History" (which is not specified) as a reason.

That evidence would be enough to justify the segregation if it were not disputed, but McKinley has offered evidence tending to show that the defendants' rationale was a pretext and that the real reason he was placed in segregation was retaliatory animus. *See Zellner*, 639 F.3d at 379. "[T]his means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant[s'] proffered reason is a lie." *Id.* McKinley has met this burden. McKinley argues, and we agree, that his disciplinary history could be viewed as a suspect reason because he had not been found guilty of a disciplinary infraction since 2008 when he was placed in segregation in 2012. And McKinley was never found guilty or disciplined for any conduct tied to gang activity, staff assaults, or failure to cooperate with investigators, so a jury could infer that "safety" was never imperiled by plaintiff McKinley. Further circumstantial evidence is the length of time McKinley was held in segregation and the number of times officers interviewed him, as though they expected his answers to the same questions to change to ones they liked.

McKinley next challenges the district court's rejection of his claim that Phelps used excessive force against him in retaliation for filing a lawsuit against Menard officers other than Phelps. It is well-established that filing lawsuits is protected First Amendment activity, *see Babcock*, 102 F.3d at 276, so we focus our analysis on the second and third elements of a retaliation claim.

The district judge determined that McKinley "produced no evidence that these events were spurred by a retaliatory motive." But that finding did not account for McKinley's sworn statement that, as Phelps was hitting him, Phelps said, "So you filed your lawsuit . . . you thought that was gonna get you out of administrative detention." If Phelps referred to McKinley's lawsuit while assaulting him, a jury could easily infer that the lawsuit was a motivating factor. *See Gracia*, 842 F.3d at 1021.

A beating would also deter an ordinary person from exercising his or her First Amendment rights. The defendants argue otherwise, pointing to the fact that McKinley continued to file lawsuits after the harassment occurred. But a retaliatory action need not *actually* deter the plaintiff from persisting with First Amendment activity; an objective test determines whether retaliatory actions would deter a person of "ordinary firmness" from engaging in the protected activity. *See Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011). And "since there is no justification for harassing people for exercising their constitutional rights," the effect of Phelps's conduct on McKinley's speech need not be great in order to be actionable. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). We cannot say as a matter of law that Phelps's physical harassment of McKinley cannot satisfy the second element of a retaliation claim.

We turn next to McKinley's claim that Phelps and Schoenbeck violated the Eighth Amendment by being deliberately indifferent to the conditions in his cell. To succeed, McKinley must show that (1) conditions were sufficiently serious to deprive him of the minimal civilized measures of life's necessities, and (2) the officers "knew of a substantial risk of serious injury to the detainee but nevertheless failed to take reasonable measures to prevent that harm from occurring." *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

We agree with the district judge that the alleged conditions of McKinley's cell were sufficient to trigger Eighth Amendment protections. The cell lacked heat or hot water in the winter and had rodent feces and urine on the floor. McKinley was not given cleaning supplies to deal with this filth or with the dust exacerbating his asthma. These conditions persisted for months, and "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). A reasonable jury could find that these conditions were sufficiently serious to deprive McKinley of the minimal civilized measure of life's necessities—as we have said before about the segregation cells at Menard, *Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007), and about similar conditions, such as extreme cold and exposure to feces, *see Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (collecting cases describing conditions that are arguably unconstitutional); *see also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

As for the defendants' state of mind, there is a factual dispute about whether Phelps and Schoenbeck were deliberately indifferent. The district judge said that McKinley had not explained what exactly he said in his grievances and in which cells he faced these problems. But McKinley's theory is different: he states that he complained

directly to both Phelps and Schoenbeck and also that they visited his cell routinely and must have noticed the cold, the broken window, and the general filth McKinley describes. *See Duckworth*, 955 F.3d at 22 (finding defendants' state of mind a triable issue when plaintiff attested that defendants routinely observed living conditions); *see also Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016); *Vinning-El*, 482 F.3d at 925. McKinley also produced an affidavit from another prisoner corroborating that he heard McKinley tell both Phelps and Schoenbeck about mice in the area, a lack of heat in winter, unavailability of cleaning supplies, and the adverse effect of these conditions on McKinley's health. Further, McKinley attested that Schoenbeck and Phelps responded to these complaints by telling him that he "should not have decided to come to administrative detention" and that he would have to "just deal with it." When weighed against the defendants' testimony that they noticed only clean and orderly cells, McKinley's evidence creates a material factual dispute.

As a final matter, the defendants are not protected by qualified immunity, which protects officials from suits about discretionary conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Babcock*, 102 F.3d at 276 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). With regard to the retaliation claims, McKinley's rights to provide a truthful account of events during an investigation and to file a lawsuit have been clearly established. *See Bridges*, 557 F.3d at 551; *Babcock*, 102 F.3d at 276. And a reasonable officer would know that segregation and beatings were not legal responses to a prisoner exercising a constitutional right. *See Babcock*, 102 F.3d at 270; *Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir. 1994). (Anyway, it is questionable whether these defendants raised the defense of qualified immunity with regard to McKinley's three years in administrative detention—they limit their discussion to his placements in investigative segregation, something that we too see as lawfully imposed.) As for the Eighth Amendment claim, the defendants were also on notice that they could not ignore the cold, feces, and filth in McKinley's cell. *See Haywood*, 842 F.3d at 1031; *Vinning-El*, 482 F.3d at 925.

Accordingly, we AFFIRM the entry of summary judgment for defendant Hasemeyer, and in all other respects, we VACATE the judgment and REMAND for further proceedings consistent with this order. We suggest that on remand, the district court consider whether it would be appropriate to recruit counsel to represent McKinley in further proceedings.